# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 10 | **DATE** | 1/15/2002 |
| **CASE TITLE** | David Moreno vs. Officer Joseph Kelley, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Motions for Judgment as a Matter of Law of Officers Joseph Kelley and John Schillinger with reference to their assault and battery and punitive claims are denied. The Village of Stone Park's Motion for Judgment as a Matter of Law is also denied. In the alternative, all defendants' Motions for New Trial are denied. In the further alternative, the Village of Stone Park's Motion for New Trial on the issue of damages alone is denied. The Village of Stone Park's order for Remittitur is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | 5 number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 16 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 87 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | JAN 16 2002 date mailed notice | |
| WAP | courtroom deputy's initials | 02 JAN 15 PM 4:15 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN 15 2002

Judge Harry D. Leinenweber
U.S. District Court

| DAVID MORENO, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 00 C 0010 |
| OFFICER JOSEPH KELLEY; OFFICER JOHN SCHILLINGER; VILLAGE OF STONE PARK; OFFICER EARL FILSKOV; CITY OF NORTHLAKE; NORTHLAKE POLICE DEPARTMENT, | Hon. Harry D. Leinenweber |
| Defendants. | |

DOCKETED
JAN 16 2002

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Pursuant to FED. R. CIV. P. 50(b), defendants bring this Renewed Motion for Judgment as a Matter of Law in light of the June 27, 2001 jury verdict for plaintiff, David Moreno, in his assault and battery claims. The jury found both the individual police officers and the city municipality liable. The defendants pray the Court to set aside and to vacate both verdicts and jury awards or, in the alternative, ask for a Motion for New Trial or Remittitur.

### BACKGROUND

Plaintiff originally brought suit in Illinois state court, but defendants removed the case due to plaintiff's 42 U.S.C. § 1983 denial of adequate medical care claim on January 3, 2000. Immediately before trial, plaintiff withdrew his § 1983 complaint, leaving the state law issues of the officers' assault and battery



charge and the municipality's liability. Through the course of litigation, defendants properly submitted their Rule 50(a) Motion for Judgment as a Matter of Law at the close of evidence, which this Court denied. At trial the jury rendered verdicts in favor of the plaintiff for assault and battery granting $6,000 in compensatory damages against Officers Joseph Kelley, John Schillinger, and Earl Filskov individually; $3,000 in punitive damages against the three officers individually; and lastly, $100,000 in compensatory damages against the Village of Stone Park under the doctrine of *respondeat superior*.

The verdict stems from two separate incidents which occurred in the early morning hours of May 3, 1998. The facts in question are disputed.

### Mardi Gras Lounge

Plaintiff and two friends entered the Mardi Gras Lounge, after which Moreno was accused of "packing" a gun by an employee of the club. Ordered to leave, plaintiff left the lounge located across the street from the Stone Park Police Station and was accosted by two plain-clothes officers. He immediately dropped the gun and fled. It is unclear whether the officers identified themselves prior to, or after, Moreno's flight. Following a foot chase, plaintiff was halted on top of a trailer by an undetermined number of officers. Plaintiff states that he voluntarily agreed to climb

down from the trailer, but demanded a ladder, when Officers Joseph Kelly and John Schillinger used excessive force to apprehend him both on the roof and on the ground. Moreno claims to have been beaten with the nightsticks of the apprehending officers, which resulted in, *inter alia,* a fractured nose. Defendants claim to have used the appropriate level of force necessary to effectuate the arrest and that no excessive force was used on the roof or on the ground.

### Village of Stone Park Police Station

After being transported to the Stone Park Police Station, plaintiff was buzzed through a set of double doors by an unidentified agent to a room at the end of the hallway and then handcuffed to a bench beside his friend, Angel Guerreo. While defendants agree that plaintiff was handcuffed to a bench in a secure area of the station, defendants contend that the two other officers present in the room were occupied and turned away from the plaintiff, and therefore are not witnesses to the events that ensued.

Thomas Hansen, owner of the Mardi Gras Lounge and unknown to plaintiff, was buzzed into the secured area and proceeded straight to Moreno with a small, unobserved object in his hand. Upon reaching Moreno, Hansen began to berate him, then struck plaintiff twice on the head with the blunt end of a small pickaxe. As Hansen

raised his arm for a third strike he said, "Do you want some more?" to both plaintiff and Guerreo, at which point an officer responded, "That's enough." Without further interference, Hansen then walked out of the station unquestioned. Plaintiff avers that Hansen was not apprehended after the attack due to his prior relationship with the Stone Park Police Department, as he often employed the officers part-time to secure his lounge. While defendants acknowledge Hansen's actions took place, they claim that the presiding officers did not know of Hansen's intentions to attack Moreno.

## ISSUES

Defendants believe that due to insufficient supporting evidence, even when viewed in light most favorable to the non-moving party, Moreno fails to prove the officers' liability for his assault and battery charge and the Village of Stone Park's liability for the requisite prior knowledge of Hansen's intent to assault Moreno. Plaintiff believes that the jury verdict should stand and that defendants are not entitled to a new trial or remittitur.

## DISCUSSION

### Jurisdiction

Due to plaintiff's federal § 1983 claim, there appeared to be a commingling of legal standards from both federal and state common law jurisprudence. Yet, even with plaintiff's withdrawal of his

- 4 -

§ 1983 claim, jurisdiction by the Court is still proper under 28 U.S.C. § 1367. As this Court retained jurisdiction through the principal federal question of § 1983 liability, supplemental jurisdiction allows this Court discretion to hear related state law issues to the primary complaint. See *Korzen v. Local Union 705, Int'l. Brotherhood of Teamsters*, 75 F.3d 285, 289 (7th Cir. 1996). Therefore, the Court will now address the officers' and municipality's liability to Moreno concerning both the events at the trailer and at the Stone Park Police Station.

### Legal Standard - Rule 50(b)

The standard governing Rule 50(b) motions is to discern whether the evidence and all reasonable inferences, when viewed in the light most favorable to the party opposing the motion, is such that reasonable people in an impartial exercise of their judgment may reach different conclusions. *Watts v. Laurent* 774 F.2d 168, 172 (1985). After a jury verdict, the question does not rest on whether "the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Honaker v. Smith* 256 F.3d 477, 484 (7th Cir. 2001). Therefore, the evidence must create more than "'some metaphysical doubt as to the material facts.'. . . [As] a mere scintilla of evidence in support of the nonmovant's position is insufficient . . . [A] party will be

successful in opposing [the motion] only when it presents 'definite, competent evidence to rebut the motion.'" *Albiero v. City of Kankakee* 246 F.3d 927, 932 (2001) citing *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). Whether under state or federal law, the evidence viewed in light most favorable to Moreno need only present a claim of deprivation with which a reasonable juror could find a cause of action. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001).

> By that standard, causes of action under § 1983 are,
>
> based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional deprivation . . . The purpose [of which] is to deter the state actor . . . from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution . . . [where] plaintiff must allege facts sufficient to show that the defendants deprived them of a right or an interest secured by the Constitution or laws of the United States and that the defendants were acting under color of state law.

*Payne v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1999). If cast in terms of Moreno's Constitutional guarantees, plaintiff is claiming not only a violation of his Fourth Amendment right against illegal search and seizure upon the trailer roof top, but also his Fourteenth Amendment right of due process in alleging maltreatment while in custody as a pretrial detainee. See *Payne*, 161 F.3d at 1039-1040. However, plaintiff failed to clearly raise these federal issues before the Court. Instead, plaintiff centered his

contentions upon state claims of assault and battery and the "willful and wanton" exception to state immunity.

### Assault/Battery & City Municipality

We now turn to the standards governing whether the individual officers were liable for the incidents at the trailer park. The issue is complicated in that both claimants offer a veritable cornucopia of legal principles, intermingling both the standards for § 1983 liability and state law claims with no apparent methodology.

### Trailer Roof

Moreno contends that the verdict should stand. Citing to claims of both § 1983 excessive force and Illinois assault and battery, plaintiff alleges that the acts of the officers were "willful and wanton." Meanwhile, defendants charge that the plaintiff could not specifically identify Officers Kelly or Schillinger until after the complaint had been filed. In addition, defendants state that plaintiff shifted his legal argument throughout trial basing his allegations as excessive force on the roof, then to assault and battery after his arrest on the ground. Moreover, plaintiff has yet to specifically identify the officers who proximately beat him at either location. Tallying the evidence in light of the Illinois Tort Immunity Act, defendants declare that they are fully absolved and therefore beckon for a Motion for

Judgment as a Matter of Law. 745 ILL. COMP. STAT. 10/2 - 101 et sq. (2001)(the "Immunity Act").

However, plaintiff counters that only through the natural course of litigation would such information, as the identity of the officers involved, be completely revealed. Moreno could identify certain aspects of the arresting officers that ultimately lead to correctly naming Officers Kelly and Schillinger on the trailer roof. Furthermore, both officers, through their own admissions, state that they were the apprehending officers on the trailer who continued to pursue Moreno even after he voluntarily agreed to come down from the trailer roof.

Clearly the central issue here involves a question of fact. Were the specified officers liable for the harm committed upon Moreno? In particular, was the evidence justified holding the defendants liable by a reasonable juror under either state law or federal claims of liability?

Defendants hold that under Illinois law, an officer is justified to use force he reasonably believes necessary to effect an arrest. 720 ILL. COMP. STAT. 5/7-5; *People v. Abney*, 81 Ill.2d 159 (1980). However, if the defendants also raise the issue of immunity, the defendants have contradicted an element within the "willful and wanton" exception or "special duty rule" to the Immunity Act.

For an action by an officer to fall outside of the shield of immunity, the special duty doctrine controls under Illinois law. "If circumstances arise whereby care or custody is exercised over a specific individual by a municipality or public official so that an affirmative duty to exercise care on behalf of that individual comes into existence, the failure to carry out that duty in a non-negligence manner is actionable." *Moran v. City of Chicago*, 286 Ill.App.3d 746, 751 (1997). According to *Moran*, the defendant must have been aware of the particular danger or risk, where the act or omission was willful or affirmative in nature, causing injury during the direct and immediate control of the municipal employee or agents. *Id.*

Moreno was in the process of being arrested, which constitutes an act within the scope of the officers' employment and control. Whether the officers knew that excessive force was being used, Moreno was being pursued due to his prior confrontation at the Mardi Gras Lounge, creating an environment for such actions to transpire. It remains to be determined whether excessive force or assault or battery occurred, but the evidence presented, when viewed in favor of Moreno calls into questions of fact that remain within the domain of a reasonable jury to answer.

Therefore, defendants' Motions for Judgment as a Matter of Law to set aside and to vacate Officers' Joseph Kelley and John

- 9 -

Schillinger verdict and punitive damages are denied. In addition, defendants' alternative Motions for a New Trial concerning the issue of damages for Officers Joseph Kelly and John Schillinger are also denied.

### Village of Stone Park Police Station

With reference to the municipality's liability while Moreno was a pretrial detainee at the Stone Park Police Station, plaintiff contends that the verdict should stand. Plaintiff avers that Officer Carnaggio was present and witnessed Hansen's assault on Moreno while he remained handcuffed to the bench in the secured area. Although not mentioned in the original reply to defendants' Rule 50(a) motion, plaintiff interjects that a § 1983 claim could be proper here against a municipality, after having withdrawn his § 1983 lack of proper medical care claim immediately before the case was submitted to the jury.

Here, the issue becomes muddled due to a lack of clarity upon the exact violation being argued. Defendants first assert state statutory defenses to counter theories of *respondeat superior*, where plaintiff ironically interlards the seminal standard of *Monelle v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) denying *respondeat superior* theories for municipality liability in federal § 1983 claims. Second,

defendants continue to revert to claims of state immunity to evade municipality liability for Hansen's actions at the Police Station.

Based upon statutory analysis, defendants insist that both 745 ILL. COMP. STAT. 10/4-104 and 745 ILL. COMP. STAT. 10/2-205 apply. Accordingly, 745 ILL. COMP. STAT. 10/4-104 states that neither public entity nor employee is liable for failure to provide or inspect a jail, while 745 ILL. COMP. STAT. 10/2-205 proffers that a public employee acting within the scope of his/her employment is not liable for the acts or omissions of others. When applied to the instant case, defendants contend that the police station retained no duty to provide sufficient supervision nor periodic inspection of prisoners and thus is not liable under 745 ILL. COMP. STAT. 10/4-104. Due to the standard articulated in 745 ILL. COMP. STAT. 10/2-205, both Officer Carnaggio and the police station cannot be held liable for the actions of a third party, namely Thomas Hansen.

Under the theory of municipal immunity, defendants focus upon the plaintiff's inability to prove the requisite prior intent of the unidentified dispatcher to have knowingly buzzed Hansen into the secured area to assault Moreno. And if such intent could be proven, defendants argue that those actions would fall outside the scope of employment, thereby excusing the municipality of any further liability.

While defendants cling to the claim of absolute municipal immunity, the "willful and wanton" exception still applies. 720 ILL. COMP. STAT. 5/7-5. Consequently, the central question becomes "Under the theory of *respondeat superior*, were the actions by the police station sufficient to constitute "willful and wanton" conduct when (1) Hansen was freely allowed to enter a secured area or (2) Officer Carnaggio did not stop or apprehend Hansen but merely said 'That's enough' when Hansen hit Moreno with the blunt end of a small pick axe?" That is the key question here.

The Seventh Circuit ruled that an employer is still liable under theories of *respondeat superior* "for the negligent, willful, malicious or criminal acts of its employees when such acts are committed during the course of employment and in furtherance of the business of the employer; but when the act is committed solely for the benefit of the employee, the employer is not liable to the injured third part." *Luna v. Meinke,* 844 F.Supp. 1284, 1287 (1994).

Defendants blindly fixate upon Moreno's failure to prove two elements of Hansen's connection with the police station to prove municipal liability. First, defendants insist that plaintiff cannot prove a causal connection between the unidentified agent who buzzed Hansen into the secured area and the police station. Second, defendants firmly aver that the lack of prior knowledge by

the police station as to Hansen's malicious intent to attack Moreno as the key link necessary to hold the municipality liable. The Court disagrees.

Proof of Hansen's intent *prior* to entering the station is not necessary -- although the fact that he had such an affinity with the station to be allowed undisturbed entry into a secured area in itself raises the issue of a policy or pattern of behavior possible for jury discernment. That issue aside, Officer Carnaggio's statement of "That's enough" was obvious proof of the police station's knowledge of Hansen's malicious intent *after* the attack. Therefore, the Stone Park Police Station's lack of action *after* Hansen assaulted Moreno is sufficient for a reasonable jury to infer municipal liability of "willful and wanton" conduct under a theory of *respondeat superior*. By remaining deliberately indifferent and not taking further action to detain Hansen, these actions *after* Hansen's attack seem to prick the surface of municipal liability. *Luna,* 844 F.Supp. at 1286.

While the two parties failed to probe fully the federal standard for municipal liability under a § 1983 analysis, a reasonable juror could have also inferred municipal fault by the standard articulated in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The Seventh Circuit interpreted the Supreme Court ruling in *Payne v. Churchich,* 161

F.3d 1030, 1040 (7th Cir. 1998), where municipal liability is predicated upon finding a consistent pattern or behavior of a Constitutional deprivation. The deprivation by the municipality must obtain the intermediate criterion of "deliberate indifference," rather than merely "negligence" on a scale where "shock the conscious" reigns as the highest of the three-part standard to qualify for municipal liability. *Id.* Here, a reasonable juror could conclude that the policy of Hansen's affinity with the station allowing him secured access, coupled with Officer Carnaggio's deliberate indifference to apprehend Hansen after the attack, could hold the Village of Stone Park liable.

Thus, defendants' Motion for Judgment as a Matter of Law with regard to the Village of Stone Park is denied. In addition, defendants' alternative Motions for a New Trial on the issue of liability and/or damages alone are also denied.

### Remittitur

Lastly, defendants' ask in the final alternative for Remittitur on the issue of the damages award against the Village of Stone Park. Defendants aver that the evidence proffered by plaintiff could not justify the $100,000 award of compensatory damages against the Village of Stone Park, when only $6,000 in compensatory damages were determined against the individual officers. Therefore, according to the defendants, the jurors were

swept by passion and in reality ordered punitive damages masked behind the compensatory figure.

Defendants cite to the correct standard in determining Remittiturs and Motions for a New Trial, in that the jury award must not only be rationally connected to the evidence presented, but not "monstrously excessive" as well. In addition, the award must be roughly comparable to similar awards. See *U.S.E.E.O.C. v. AIC Security Investigation, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1989); *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985). Yet, the Court is inclined to disagree with defendants' conclusion on the jury award determination.

As the Court found that a reasonable jury had sufficient evidence to deny defendants' Motions for a Judgment as a Matter of Law on the issues of the officers' and the municipalities' liability, the Court is prone to agree with the jury's award determination.

Both parties employ "fuzzy math" to justify their arguments regarding the damages award. The defendants' attempt to substantiate their claim by stating that the plaintiff evidenced only a $35 loss of out-of-pocket expenses and that the only indication of "disfigurement" was "minor scarring to an unnoticeable part of his body." Furthermore, due to Moreno's withdrawal of his emotional distress claim, the exact sum should be

further limited. While these facts may be true, so too were the facts that a reasonable jury found in holding the defendants liable. Plaintiff suffered from injuries that sustained a five-day hospital stay, a Court-determined $900 loss of employment compensation, and permanent scarring from Hansen's attack while in the custody of the Village of Stone Park.

In their strongest reproach, defendants argue that the disparity between the $100,000 compensatory award against the Village was fifteen times the determination against the individual officers, and thus could only be predicated upon the passions of the jurors and must be found excessive. Citing to *Taliferro v. Augle*, 757 F.2d 157 (7th Cir. 1985), defendants contend that the Court reduced compensatory damages from $47,000 to $25,000 in an excessive force case, where presently, only $35 of plaintiff's out-of-pocket expense could be justified. However, defendants' logic is flawed in that they compare the amount determined against the Village with those of the individual officers. Defendants compare two separate entities, rather than what they feel the Village, alone, should be determined to pay.

Here, plaintiff counters that the defendants' motion in *limine* limited the total amount of expense cited, but then employs a bizarre ratio to calculate his understanding of what his damages determination could have been. According to Moreno, plaintiff

analogizes the $35 out-of-pocket loss to the $900 wage determination, compared to the $25,000 difference of *Taliferro* with "X," what the Court could have determined for Moreno. If Moreno was attempting to utilize the *Taliferro* logic, he should have compared the percentage of Judge Posner's reduction from the original award of $47,000 to $25,000; thus, the 53% reduction should have been the figure with which Moreno or defendants employed to reduce, if at all, the original $100,000 compensatory award here.

However, the Court is disinclined to overturn jury award determinations utilizing any of the fuzzy math calculations due to the failure of the defendants to prove that there was no rational connection between the evidence and the award determination. In addition, the award does not appear to be "monstrously excessive" to other case law, as both parties failed to produce any exact case law on point. Thus, with the Supreme Court ruling in *Smith v. Wade*, 461 U.S. 30, 53, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (U.S. Mo. 1983) that, "there has never been a common law rule that the threshold for punitive damages must always be higher than for compensatory liability," the Court denies defendants' Remittitur.

## CONCLUSION

Therefore, for the reasons stated herein, the Motions for Judgment as a Matter of Law of Officers Joseph Kelley and John

Schillinger with reference to their assault and battery and punitive claims are denied.

The Village of Stone Park's Motion for Judgment as a Matter of Law is also denied.

In the alternative, all defendants' Motions for New Trial are also denied.

In the further alternative, the Village of Stone Park's Motion for New Trial on the issue of damages alone is denied.

Lastly, the Village of Stone Park's order for Remittitur is also denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: January 15, 2002